**RICE GROWERS ASSOCIATION OF CALIFORNIA, Plaintiff,**
v.
**F. CARRERA & HNO., Inc., Defendant.**

Civ. No. 6414.

United States District Court
D. Puerto Rico, San Juan Division.

Sept. 29, 1954.

---

18

Brown, Newsom & Cordova, San Juan, P. R., for plaintiff.

Geigel & Silva, San Juan, P. R., for defendant.

RUIZ-NAZARIO, District Judge.

This is an action for recovery on a sellers lien.

Two contracts are involved, calling for the sale of 10,000 bags of rice. Shipments were made from time to time under the contracts until on Sept. 1, 1951, 3,000 bags of rice remained to be shipped under the contracts. These 3,000 bags are the subject of the present controversy.

The fifth clause of the contracts states as follows: "Delivery shall be made as herein provided within thirty days from date, unless otherwise specified herein, upon written notice of at least seven days to Seller by Buyer. If Buyer fails to give notice and instructions for delivery at least seven days before expiration of said delivery period, Seller may, at Seller's option, cancel this contract without further liability hereunder by either party hereto or may make delivery to any independent public warehouseman with-

in the State of California and not located on or adjacent to Seller's mill property, at the risk and expense of Buyer, in exchange for a negotiable warehouse receipt, delivery order and/or dock receipt, and Buyer shall in such event pay for the rice against such warehouse receipt, delivery order and/or dock receipt, in lieu of other evidence of title specified herein. Goods however shipped are at risk and for account of Buyer from and after (and shipment by Seller shall be deemed completed upon) delivery to carrier or carrier's agent and issuance of bill of lading, which shall be conclusive evidence of delivery and shipment on the date it bears. Dates of invoices, drafts, weight or inspection certificates and insurance policies or certificates have no bearing on the time of delivery or shipment." The face of the contracts states as follows: "Time of delivery—Shipments to be made not later than September 30, 1951 at buyers option". Thus, construing the face of the contracts with the endorsed clauses, it is apparent that the defendant had until 23 September to give notice and instructions for delivery of the merchandise. Plaintiff received no shipping instructions from defendant with reference to any part of the 3,000 bags of rice. Nevertheless, some time between 0800 of September 18 and 0600 of Sept. 20, the said 3,000 bags of rice were loaded on the S. S. Leader at Oakland, California, and said steamer sailed from San Francisco on September 21, 1953.

By letter dated Sept. 22, at San Juan, received by defendant on Sept. 24, plaintiff's broker wrote defendant that it had received advices from plaintiff to the effect that the 3,000 bags of rice had been shipped to defendant on the S. S. Leader. This letter was the first notice received by defendant that the 3,000 bags of rice had been actually shipped.

Defendant replied by letter of October 2, stating that plaintiff should have waited for defendant's shipping instructions, and that inasmuch as it had not requested the shipment of the 3,000 bags of rice by S. S. Leader, defendant awaited in-

structions from plaintiff as to what disposition defendant should make of said rice.

In Norrington v. Wright, 115 U.S. 188, 6 S.Ct. 12, 29 L.Ed. 366, the Court held that in a mercantile contract, a statement descriptive of the subject matter, or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty, or condition precedent, upon the failure of which the party aggrieved may repudiate the whole contract. The Court stated that the opinions delivered in the House of Lords in Bowes v. Shand, 2 App.Cas. 455, stated the general principles underlying this class of cases most clearly and satisfactorily, and quoted Lord Chancellor Cairns:

> "It does not appear to me to be a question for your Lordships, or for any court, to consider whether that is a contract which bears upon the face of it some reason, some explanation, why it was made in that form, and why the stipulation is made that the shipment should be during these particular months. It is a mercantile contract, and merchants are not in the habit of placing upon their contracts stipulations to which they do not attach some value and importance." 2 App.Cas. 463.

> "If it be admitted that the literal meaning would imply that the whole quantity must be put on board during a specified time, it is no answer to that literal meaning, it is no observation which can dispose of, or get rid of, or displace, that literal meaning, to say that it puts an additional burden on the seller, without a corresponding benefit to the purchaser; that is a matter of which the seller and the purchaser are the best judges. Nor is it any reason for saying that it would be a means by which purchasers, without any real cause, would frequently obtain an excuse for rejecting contracts when prices had dropped. The nonfulfilment of any term in any contract is a means by which a purchaser is able to get rid of the contract when prices have dropped; but that is no reason why a term which is found in a contract should not be fulfilled." pp. 465, 466.

> "It was suggested that even if the construction of the contract be as I have stated, still if the rice was not put on board in the particular months, that would not be a reason which would justify the appellants in having rejected the rice altogether, but that it might afford a ground for a cross action by them if they could show that any particular damage resulted to them from the rice not having been put on board in the months in question. My Lords, I cannot think that there is any foundation whatever for that argument. If the construction of the contract be as I have said, that it bears that the rice is to be put on board in the months in question, that is part of the description of the subject-matter of what is sold. What is sold is not 300 tons of rice in gross or in general. It is 300 tons of Madras rice to be put on board at Madras during the particular months."

> "The plaintiff, who sues upon that contract, has not launched his case until he has shown that he has tendered that thing which has been contracted for, and if he is unable to show that, he cannot claim any damages for the nonfulfilment of the contract." pp. 467, 468.

Also the statement of Lord Blackburn:

> "If the description of the article tendered is different in any respect, it is not the article bargained for, and the other party is not bound to take it. I think in this case what the parties bargained for was rice shipped at Madras or the coast of Madras. Equally good rice might have been shipped a little to the north or a little to the south of the coast of Madras. I do not quite know what the boundary is, and

probably equally good rice might have been shipped in February as was shipped in March, or equally good rice might have been shipped in May as was shipped in April, and I dare say equally good rice might have been put on board another ship as that which was put on board the Rajah of Cochin. But the parties have chosen, for the reasons best known to themselves, to say: We bargain to take rice, shipped in this particular region, at that particular time, on board that particular ship; and before the defendants can be compelled to take anything in fulfilment of that contract it must be shown not merely that it is equally good, but that it is the same article as they have bargained for—otherwise they are not bound to take it." 2 App.Cas. 480, 481.

Thus as time was of the essence in these two contracts, plaintiff under them could not ship before Sept. 24, 1951. If it thought that space would not be available at a later date, it had no choice under the contract but to rely upon the specific remedy afforded it by the contract *prepared by it,* not the defendant: cancel the contract without further liability to either party or make delivery to an independent warehouseman in California at the risk and expense of the buyer, in exchange for a negotiable warehouse receipt, and seek payment from defendant for the rice against the warehouse receipt.

In the absence of instructions from buyer, seller was not, as plaintiff contends, obligated to ship the rice at any event not later than September 30. All it had to do was, either cancel the contract, in which event both parties would be relieved of further liability, or make delivery to an independent warehouse. Either course of action would have protected seller, and it cannot be said that defendant, in signing the contract, contemplated any other course of action in the event it failed to give instructions.

The action will be dismissed and judgment entered for defendant.

Defendant shall submit proposed findings of fact and conclusions of law, with notice thereof to plaintiff, within 15 days from this date.